**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**WALMART INC.**, *et al.*,                                                          **PLAINTIFFS**

V.                  **CASE NO. 5:18-CV-05216-TLB**

**SYNCHRONY BANK**                                            **DEFENDANT**

**OPINION AND ORDER**

This matter is back before the Court on a Motion to Intervene (Doc. 71) and Motion to Unseal Complaint (Doc. 73), both of which are filed by Proposed Intervenors Stichting Depositary APG Developed Markets Equity Pool and Stichting Depositary APG Fixed Income Credit Pool (collectively, "APG"). Synchrony filed a response in opposition (Doc. 93), in which Walmart[1] joined (Doc. 91). APG filed a reply (Doc. 98), and Synchrony filed a sur-reply (Doc. 99). For the reasons set forth below, the Court **GRANTS** APG's Motions (Docs. 71, 73).

**I. BACKGROUND**

The parties' dispute first came to this Court's attention on November 1, 2018, when Walmart filed a Motion for Leave to File Under Seal (Doc. 3) seeking permission to publicly file a redacted Complaint and to file under seal an unredacted copy of the Complaint. The Court provisionally granted this request (Doc. 6). In this Complaint, which the Court will refer to as the "Walmart Complaint," Walmart alleges various breach of

---

[1] Eight Walmart entities are named as Plaintiffs in this action. For the sake of simplicity, the Court refers to them as "Walmart" throughout this Order.

contract claims against Synchrony, all of which arise out of the Agreement governing a credit card program between Walmart and Synchrony.[2]

The next day, a derivative securities action was filed in the United States District Court for the District of Connecticut alleging that Synchrony violated federal securities laws by misrepresenting the state of its relationship with Walmart. *Stichting Depositary APG Developed Markets Equity Pool, et al. v. Synchrony Financial, et al.*, No. 3:18-cv-01818-VAB (the "Connecticut Action").[3] The allegations made in the Walmart Complaint also feature prominently in the Connecticut Action. The plaintiffs in the Connecticut Action (the "Connecticut Plaintiffs") allege that Synchrony's business relationship with Walmart was endangered by Synchrony's decision to tighten credit approval standards and that Synchrony concealed its souring relationship with Walmart from shareholders.

On January 31, 2019, Walmart and Synchrony filed a Stipulation of Dismissal with Prejudice. (Doc. 69). The Connecticut Action, however, continued: on June 26, 2019, Synchrony filed a motion to dismiss in the Connecticut Action, which remains pending. (Connecticut Action, Doc. 98). Among other arguments in its motion to dismiss, Synchrony points to Walmart's Complaint in this Court as evidence that APG's claims in the Connecticut Action should be dismissed. (Connecticut Action, Doc. 99, p. 64). Later, after failed negotiations between the parties, APG filed a motion for partial modification of the discovery stay in the Connecticut Action seeking a copy of the unredacted Walmart Complaint from this case. (Connecticut Action, Doc. 121). That motion remains pending.

---

[2] In this program, Synchrony extended credit to Walmart customers through Walmart-branded credit cards.
[3] APG was appointed lead plaintiff in the Connecticut Action on February 5, 2019.

A day after filing the motion for partial modification of the discovery stay in the Connecticut Action, APG filed the Motions to Intervene and Unseal Complaint that are at issue here.

## II. DISCUSSION

APG seeks permissive intervention in this action pursuant to Federal Rule of Civil Procedure 24(b) and also seeks to unseal the unredacted Walmart Complaint. For the reasons discussed below, the Court finds that APG is entitled to permissive intervention and that the unredacted Walmart Complaint should be unsealed.

The Court concludes that permissive intervention under Rule 24(b) is the correct procedural vehicle for APG to seek access to judicial records in this case and that APG is entitled to permissive intervention. *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (citations omitted). Normally, parties seeking permissive intervention under Rule 24(b) must show: "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common." *Id.* at 966 (citation omitted). The Eighth Circuit, however, has found that "an independent basis of jurisdiction is not required" when a party is seeking to intervene only to unseal documents. *Id.* at 967. Furthermore, the timeliness requirement is met where a non-party seeking to unseal documents does so even a year after a case has been closed. *Id.* at 966 n. 2. Finally, the Eighth Circuit has also found that the typicality requirement is met when a non-party seeks intervention to unseal documents. *Id.* at 967. Here, APG seeks to intervene less than a year after Walmart dismissed its claims, and APG seeks intervention specifically to unseal the unredacted Walmart Complaint. The Court concludes that APG therefore satisfies the requirements for permissive intervention under Rule 24(b).

But just because APG may intervene does not necessarily mean that the unredacted Walmart Complaint should be unsealed. *Flynt*, 782 F.3d at 967 n. 3 ("The question of whether a party is allowed to intervene is distinct from the issue of whether the party's motion to unseal should be granted.") (citation omitted). The Court now turns to decide this issue. "Generally speaking, there is a common-law right of access to judicial records, but that right is not absolute." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) ("*Flynt II*") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013)). Still, the public's right to access is not gratuitous; it is designed to facilitate "the public's confidence in, and the accountability of, the judiciary." *Flynt II*, 885 F.3d at 511 (citing *IDT Corp.*, 709 F.3d at 1222). "In order to adjudicate the issue, [the Court] must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access that would otherwise apply to such records." *Id.* (quoting *IDT Corp.*, 709 F.3d at 1222-23). "Whether the common-law presumption can be overcome is determined by balancing 'the interests served by the common-law right of access . . . against the salutary interests served by maintaining confidentiality of the information sought to be sealed.'" *Id.* (alteration in original) (quoting *IDT Corp.*, 709 F.3d at 1223)). The Court must weigh the "balance of interests" between the common-law right of access and the benefits of maintaining confidentiality, *Flynt II*, 885 F.3d at 512, "in light of the relevant facts and circumstances of the particular case." *IDT Corp.*, 709 F.3d at 1223 (quoting *Nixon*, 435 U.S. at 599).

At the first prong of this test, the Court concludes that the unredacted Walmart Complaint is a "judicial record" for which there is a presumption of public access. The

Eighth Circuit noted that there "may be a historical case to be made that a civil complaint filed with a court, but then soon dismissed pursuant to settlement" is not a "judicial record," but it ultimately recognized the "modern trend in federal cases to treat pleadings in civil litigation . . . as presumptively public, even when the case is pending before judgment, or resolved by settlement." *IDT Corp.*, 709 F.3d at 1222–23 (internal citations omitted). In this Court's view, a complaint summons an Article III tribunal to resolve a dispute and is presumptively accessible by the public. For these reasons, the Court concludes that the unredacted Walmart Complaint is a "judicial record."

The Court now turns to assess how much weight to give the presumption of access in this case. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and [the] resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "[J]udicial records and documents generally will fall 'somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* at 1223 (quoting *Amodeo*, 71 F.3d at 1049). In *IDT Corp.*, the Eighth Circuit held that the public's interest in accessing an antitrust complaint that was "never adjudicated" was "weak." *Id.* at 1224. In that circumstance, "the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* (citing *Amodeo*, 71 F.3d at 1050). Given that the allegations here were never adjudicated on the merits, the Court agrees that the presumption of public access is relatively weak. Still, Synchrony has used the allegations in the redacted Walmart Complaint as both a sword and a shield against APG's

5

allegations in the Connecticut Action, arguing that the allegations in the redacted Walmart Complaint directly refute APG's claims. In the Court's view, invoking the redacted Walmart Complaint as a means to dismiss the claims in the Connecticut Action increases the public's interest in understanding the allegations made in the *unredacted* Walmart Complaint.

On the other side of the scale, the Court must assess Walmart's and Synchrony's proffered rationales for nondisclosure. Walmart argues that the unredacted Walmart Complaint contains information about the credit card program's performance, profit sharing calculations, application approvals, customer base composition, and business strategies. As a result, Walmart asserts that this information "could allow other card issuers to focus their efforts in some areas and avoid others, to the *potential* detriment of Walmart and its current credit card programs." (Doc. 91, p. 3 (emphasis added)). This speculative explanation does not convince the Court that Walmart has a compelling reason for nondisclosure of the unredacted Walmart Complaint.

Synchrony's rationale for nondisclosure of the redacted allegations is more fulsome. Synchrony argues that the redacted allegations disclose non-public information about Synchrony's partnership agreements, profit-sharing calculations, application approval processes, and other details about the failed Walmart-Synchrony partnership which, if revealed, would give its competitors and retail affiliates competitive information that could be used against Synchrony in future negotiations (Doc. 93-1, p. 2). The Court has reviewed the unredacted Walmart Complaint and agrees that the redacted allegations do reveal the general manner in which Walmart and Synchrony agreed to share profits generated by the credit card program, though those allegations do not describe the

6

specific percentages of profit distributed to each party. The redacted allegations do describe, in general, certain costs that Synchrony was allowed to use in its profit calculations. Furthermore, the redacted allegations include historical data revealing losses, applicant credit scores, differences between mobile and non-mobile applicants, and differences between the performance of the private label credit card and dual card. These redacted data are specific to the Walmart-Synchrony credit card program, which allegedly began in 2013 and expired in July 2019.

While the Court appreciates the concern that the redacted allegations contain competitively sensitive information, the Court is unconvinced that Walmart's and Synchrony's competitors would learn much of value from the redacted allegations. Those allegations do not reveal the specifics of the profit-sharing arrangement between Walmart and Synchrony; instead, they generally describes certain costs that were used as inputs in that arrangement, including tax rates and cost-of-funds indices.[4] These are not esoteric costs: most profit-sharing arrangement should contain provisions for allocating such common costs between partners. Indeed, the Court notes that agreements governing similar credit card programs are publicly available on the Securities and Exchange Commission's ("SEC") website, and those agreements include detailed formulas for payments between participants, including the allocation of costs. *See, e.g.*, Amended and Restated Co-Brand and Private Label Credit Card Consumer Program Agreement by and between Stein Mart, Inc. and GE Capital Retail Bank at Schedule 4.1 (6), *available at https://www.sec.gov/Archives/edgar/data/884940/000119312511135089*

---

[4] Common cost-of-fund indices include the London Interbank Offered Rate ("LIBOR") and the Federal Funds rate.

7

*2/d234595dex101.htm* (last visited Nov. 21, 2019).[5]  To the extent the redacted allegations specify applicable tax rates and cost-of-funds indices, the Court notes that tax rates and common cost-of-funds indices are public.  Additionally, the Court is unconvinced that the historical information specific to the credit card program would present any competitive disadvantage to Walmart or Synchrony in their future dealings with other parties.  In sum, the Court is unpersuaded that these "countervailing reasons" for nondisclosure outweigh the presumption of public access.

As another countervailing argument against disclosure, Synchrony asserts that unsealing the unredacted Walmart Complaint is essentially an end-run around the automatic stay of discovery in the Connecticut Action.  Synchrony is correct that, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss."  Some of APG's claims arise out of the PSLRA, and Synchrony filed a Motion to Dismiss in the Connecticut Action; thus, there is no question that the stay of discovery is in effect in that case.  The question is whether the PSLRA stay in a separate action prevents this Court from unsealing pleadings in this action.  The Eighth Circuit has not spoken on this question, and other district courts in other circuits have reached differing conclusions. *Compare In re Marriott*, 2019 WL 4855202, at *2 (D. Md. Aug. 30, 2019) (concluding that the PSLRA stay is not violated when a party seeks to unseal pleadings in another case), *and Gubricky on behalf of Chipotle Mexican Grill, Inc.*

---

[5] The Court may take judicial notice of documents publicly filed with the SEC. *Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401, 405 n. 1 (8th Cir. 2017) (noting that the Eighth Circuit previously approved taking judicial notice of public SEC filings) (citing *Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015)).

*v. Ellis*, 2018 WL 1558264, at *4 (D. Colo. Mar. 26, 2018) (rejecting the notion that the PSLRA prevents a party from seeking to unseal pleadings in a separate case), *with Smilovits v. First Solar Incorp.*, 2016 WL 5682723, at *5 (D. Ariz. Sept. 30, 2016) (holding that seeking to unseal a pleading in a separate case was "a clear attempt to avoid the Court's previous rulings that discovery should not be available to assist Derivative Plaintiffs").

The Court rejects Synchrony's argument that unsealing the unredacted Walmart Complaint would be tantamount to an end-run around the PSLRA stay in the Connecticut Action. If the Court were to accept Synchrony's argument, it would mean that APG cannot directly unseal the Walmart Complaint, but a journalist could unseal the unredacted Walmart Complaint and then give APG a copy of the pleading. "This makes little sense and can hardly be said to promote the interest of justice." *Gubricky*, 2018 WL 1558264, at *4. Since Synchrony's argument leads to absurd results, the Court rejects it. In this Court's view, APG's status as a plaintiff in the Connecticut Action does not handicap its ability to unseal pleadings in this action.

In sum, considering all of the facts, circumstances, and interests advanced by the parties, the Court finds that APG's common law presumption of access to the unredacted Walmart Complaint outweighs the presented countervailing reasons for nondisclosure. *See Flynt II*, 885 F.3d at 511. The balance of interests therefore weighs in favor of unsealing the unredacted Walmart Complaint.

## III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** APG's Motion to Intervene (Doc. 71) and Motion to Unseal Complaint (Doc. 73).  The Clerk is **DIRECTED** to unseal the unredacted Walmart Complaint on **Friday, December 6, 2019** (Doc. 1-1).

**IT IS SO ORDERED** on this 25th day of November, 2019.

/s/  Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE
