IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WALMART INC., *et al.*,                                                    PLAINTIFFS

V.                              CASE NO. 5:18-CV-05216-TLB

SYNCHRONY BANK                                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is once again before the Court on Defendant Synchrony Bank's ("Synchrony") Emergency Motion for a Stay Pending Appeal and Request to Shorten Time to Respond. (Doc. 104). Intervenors Stichting Depositary APG Developed Markets Equity Pool and Stichting Depositary APG Fixed Income Credit Pool (collectively, "APG") filed a response in opposition (Doc. 112), and the matter is therefore ripe for consideration. For the reasons explained below, the Court **DENIES** Synchrony's Emergency Motion for a Stay Pending Appeal. (Doc. 104). The Court does, however, **STAY** its prior Order (Doc. 102) until thirty (30) days after the United States District Court for the District of Connecticut enters a decision on the pending Motion for Partial Modification of the PSLRA Discovery Stay (the "Discovery Motion") in *Stichting Depositary APG Developed Markets Equity Pool, et al. v. Synchrony Financial, et al.*, No. 3:18-cv-01818-VAB (Doc. 121).[1]

---

[1] This action (hereafter, the "Connecticut Action") is a derivative securities action in the United States District Court for the District of Connecticut. The plaintiffs in that action allege that Synchrony violated federal securities laws by misrepresenting the state of its relationship with Walmart.

1

## I. BACKGROUND

In its prior Order, the Court set forth the relevant facts in considerable detail. (Doc. 102). For the sake of brevity, the Court will not repeat itself here but will briefly recount the development since the Court's decision to unseal the sealed Complaint.[2] In response to this Court's prior Order, Synchrony filed a notice of appeal to the Eighth Circuit Court of Appeals and the present Emergency Motion for a Stay Pending Appeal. (Docs. 103, 104). Synchrony also filed with the Eighth Circuit a motion for stay of this Court's Order pending the appeal and to expedite the appeal. On December 18, 2019, instead of staying this Court's Order, the Eighth Circuit denied the motion to expedite the appeal and stayed the appeal pending a decision on the Discovery Motion in the Connecticut Action. *Synchrony Bank v. Stichting Depositary APG, et al.*, Case No. 19-3579 (8th Cir. 2019).

## II. LEGAL STANDARD

The Court must consider the following four factors when determining whether to grant a motion for a stay pending appeal: (1) the likelihood of the movant's success on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the non-moving party; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). As the moving party, Synchrony bears the burden to prove all four factors. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam). To determine whether to grant a stay pending appeal, the

---

[2] Throughout this Order, the Court will refer to the public copy of the Complaint that contains redactions as the "public Complaint." The Court will refer to the sealed copy of the Complaint, which is unredacted, as the "sealed Complaint."

Court "must consider the relative strength" of the relevant factors and "balanc[e] them all, with the most important factor being the likelihood of success on appeal." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (internal quotations and citations omitted). The Eighth Circuit has noted that "[c]lear evidence of irreparable injury should result in a less stringent requirement of certainty of victory . . . ." *Id.* (citing Developments in the Law, *Injunctions*, 78 Harv. L. Rev. 994, 1056 (1965)).

## III. DISCUSSION

Synchrony seeks a stay of the Court's Order to unseal the sealed Complaint pending Synchrony's appeal of that Order. As discussed below, the first and third factors weigh in favor of denying Synchrony's request for a stay pending appeal, the second factor weighs in favor of a stay, and the fourth factor cuts both ways. After weighing the four factors, the Court concludes that Synchrony is not entitled to a stay pending final disposition of its appeal. For the reasons discussed below, however, the Court concludes that the balance of equities favors a temporary stay that ends thirty (30) days after the Connecticut Court rules on the Discovery Motion in that case.

### A. Likelihood Of Success On The Merits

In its present motion, Synchrony argues that it is likely to succeed on the merits of its appeal of the Court's Order to unseal the sealed Complaint because the Court committed the following errors: (1) considering the Connecticut Action plaintiffs' private interest as a relevant factor; (2) finding that Synchrony used the public Complaint as "a sword and a shield" in the Connecticut Action; (3) improperly raising Synchrony's burden of proof; (4) finding that credit card program agreements are publicly available and that the Walmart-Synchrony Agreement ended in July 2019; and (5) ordering the unsealing of

3

the entire sealed Complaint, rather than just part of it. Without restating its entire prior Order, the Court will address each of Synchrony's latest arguments.

### 1. Private Interests

First, Synchrony asserts that "the Court committed legal error when it considered the Securities Plaintiffs' private interest in the Securities Litigation as a relevant factor in determining the public interest in the Complaint." (Doc. 105, p. 5). Contrary to this assertion, the Court recited and correctly applied the proper standard in its prior Order. To determine whether to unseal a judicial record,

> [T]he court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed.

*IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). In its prior Order, this Court found that Synchrony's invocation of "the [public] Walmart Complaint as a means to dismiss the claims in the Connecticut Action increase[d] the *public's* interest in understanding the allegations made in the [sealed] Walmart Complaint." (Doc. 102, p. 6 (emphasis added)). The Court correctly framed the analysis in terms of the public's interest, as required by Eighth Circuit precedent. Synchrony is not likely to succeed on the merits of this argument.

### 2. Synchrony's Use of the Public Complaint

Second, Synchrony argues that it did not use the public Complaint as a "sword and a shield" in the Connecticut Action. The Court disagrees. At various points in Synchrony's motion to dismiss in the Connecticut Action, it cites to the allegations in the public Complaint:

4

- "Walmart alleged that Synchrony's underwriting was, if anything, not tight enough." (Connecticut Action, Doc. 99, p. 15).

- "Plaintiffs assert Exchange Act claims by fictionalizing two separate frauds. Neither is supported by any facts, and both are based on, but directly refuted by, Walmart's allegations." *Id.*

- "[T]his theory is contradicted by Walmart's own lawsuit—which complained that Synchrony extended credit to 'riskier' customers . . . , not that underwriting was too tight . . . ." *Id.* at 16 (underlining in original).

- "Even weaker is Plaintiffs' reliance on Walmart's November 1, 2018 suit, which could not 'reveal' any undisclosed 'severe' underwriting tightening, as Walmart's lawsuit nowhere so alleged." *Id.* at 17.

- "[T]he Walmart complaint rejects the supposed 'truth' alleged in the [amended complaint]: rather than complaining about underwriting tightening, Walmart alleged that Synchrony's underwriting 'exposed the program to significant credit risk and 'extended credit to riskier customers' as compared to other programs." *Id.* at 64 (underlining in original).

Given these arguments, there is no question that Synchrony used the allegations in the public Complaint to support arguments for dismissal of the Connecticut Action. Accordingly, the Court is not convinced that it factually erred and finds that Synchrony is not likely to prevail on this argument.

Synchrony also argues that "it used only the publicly available portions of the Complaint—cited by the Securities Plaintiffs themselves in their complaint—to argue that the Redacted Complaint . . . did not support the Securities Plaintiffs' claim . . . ." (Doc. 105, p. 7). The Court does not contest this point. But, as the Court explained in its prior Order, "invoking the [public] Walmart Complaint as a means to dismiss the claims in the Connecticut Action increases the *public's* interest in understanding the allegations made in the [sealed] Walmart Complaint." (Doc. 102, p. 6). Synchrony presents no authorities

5

or evidence to demonstrate that this finding was erroneous, and therefore the Court finds that Synchrony is not likely to prevail on this argument.

### 3. Application of the Weighing Test

Next, Synchrony argues that the Court committed legal error by "impos[ing] the novel requirement that it be convinced that Synchrony and Walmart have a compelling reason for nondisclosure . . . ." (Doc. 105, p. 7 (internal quotations and alterations omitted)). Contrary to Synchrony's assertions, as discussed *supra*, the Court recited and applied the standard set forth in *IDT Corp.*, 709 F.3d at 1222, to decide whether to unseal the sealed Complaint. The Court properly applied this standard by determining the public's interest in access to the sealed Complaint and weighing that interest against the proffered reasons for nondisclosure of the sealed Complaint. *See* Doc. 102, p. 4–5.

Similarly, Synchrony also argues that the Court advanced "an exceedingly high threshold for preventing public disclosure . . . ." (Doc. 105, p. 7). This assertion is incorrect. The Court did not impose an impermissibly high burden of proof on Synchrony. Rather, the Court weighed the public's interest in access against Synchrony's interest in non-disclosure and found that Synchrony's asserted interests did not "outweigh the presumption of public access." *Id.* at 8.[3] This balancing test is precisely what the Eighth

---

[3] Synchrony's brief also misrepresents the Court's holding. For example, Synchrony asserts that the Court "acknowledg[ed] that 'the redacted allegations contain competitively sensitive information . . . .'" (Doc. 105, p. 7 (citing Doc. 102, at p. 7)). The Court did no such thing; instead, the full sentence cited by Synchrony states:

> While the Court appreciates the concern that the redacted allegations contain competitively sensitive information, *the Court is unconvinced that Walmart's and Synchrony's competitors would learn much of value from the redacted allegations.*

(Doc. 102, p. 7 (emphasis added)).

Circuit's standard requires. The Court concludes that Synchrony is not likely to prevail on this argument.[4]

### 4. Alleged Factual Errors

Next Synchrony asserts that, even if the Court correctly applied the legal standard, its conclusion is infected with factual errors. The first of these allegedly fatal errors is the Court's factual finding that agreements similar to the one described in the redacted allegations are found on the Securities and Exchange Commission ("SEC") website. Synchrony correctly notes that those agreements contain redactions, but, again, Synchrony's observation misses the point. The allegations in the sealed Complaint generally reveal that certain costs are allocated between Synchrony and Walmart in their profit-sharing arrangement; the agreements on the SEC's website also reveal that such costs are allocated between parties to such agreements, notwithstanding the redactions to those agreements.[5] Thus, the Court's overall point stands: it is difficult for the Court

---

[4] Some of Synchrony's arguments suggest that Synchrony misapprehends the correct standard for unsealing a judicial record. For example, Synchrony argues that its reasons for nondisclosure are supported by "unchallenged declarations." (Doc. 105, p. 7). It is true that Synchrony's declarations—which contain arguments about the sensitivity of the sealed allegations—are unchallenged; this is because APG cannot see the content of the sealed allegations and rebut those declarations. No party has the burden of refuting Synchrony's allegations regarding commercial sensitivity. Instead, Synchrony has the burden of providing compelling reasons for secrecy, see In re Neal, 461, F.3d 1048, 1053 (8th Cir. 2006), and then the Court must weigh such reasons, if any, against the public's interest in access to judicial records.

[5] Amended and Restated Co-Brand and Private Label Credit Card Consumer Program Agreement by and between Stein Mart, Inc. and GE Capital Retail Bank at Schedule 4.1 (6), available at https://www.sec.gov/Archives/edgar/data/884940/000119312511350892/d234595dex101.htm (last visited January 2, 2020) (describing the "cost of debt funding . . . at the applicable fixed and floating interest rates" and "all taxes" as expenses included in a revenue-sharing calculation).

to accept that the allegations in the sealed Complaint are competitively sensitive when similar information is publicly available.

Synchrony also argues that the Court committed factual error when it "incorrectly implied that the Agreement between Synchrony and Walmart terminated in July 2019 . . . ." (Doc. 105, p. 8–9). While it is true that the Court's Order states that the Agreement allegedly ended in July 2019, the July 2019 date was represented to the Court in APG's Memorandum of Law in Support of Their Motion to Intervene (Doc. 72, p. 5), and Synchrony did not contest that representation in its Response. *See* Doc. 93. Now, for the first time, Synchrony represents that its Agreement with Walmart ended in October 2019. The Court's Order was correctly premised upon the record before it at the time.

Furthermore, even if the Agreement ended in October 2019, this fact does not alter the Court's prior analysis. As the Court noted in its Order, the sealed allegations include "historical data" relating to the Walmart-Synchrony credit card program, including losses, credit score differences between mobile and non-mobile applications, and differences between the performance of different financial products. (Doc. 102, p. 7). All of this information relates to pre-2019 activity in the Walmart-Synchrony credit card program. Even if the Agreement did continue until October 2019, Synchrony has failed to explain how the pre-2019 historical data in the public Complaint presents any competitive risk.

In a footnote, Synchrony asserts that "the Court made an additionally clearly erroneous factual finding when it said that the Agreement between Synchrony and Walmart used publicly disclosed tax rates and common cost-of-funds indices, such as the London Interbank Offer Rate ("LIBOR") and the Federal Funds rate referenced by the Court." (Doc. 105, p. 10 n.4). Synchrony argues, without pointing to any record evidence

8

or pleading, that "the specific tax and cost-of-funds rates used in that Agreement . . . . did not correspond to those publicly disclosed rates and indices." *Id.* Without citations, it is difficult for the Court to know what evidence Synchrony's argument relies upon. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). As far as the Court can tell, the tax rates discussed in the public Complaint are public knowledge. Additionally, the cost-of-funds indices mentioned in the redacted allegations are all public.[6] This evidence tends to show that Synchrony is not likely to succeed on the merits of this argument.

### 5. Unsealing the Entire Sealed Complaint

Finally, Synchrony argues that the Court erred by unsealing the entire sealed Complaint. Synchrony asserts that "[i]t is undisputed that the only sections of the Walmart Complaint that either party referenced in the Connecticut action" were only relevant to "Walmart's underwriting related claim." (Doc. 105, p. 9). Synchrony also points out that it had an agreement with APG wherein APG would have accepted a partially redacted copy of the Complaint that revealed the underwriting-related allegations. *Id.* at 9–10.

These arguments do not convince the Court that it erred by unsealing the entire sealed Complaint. Synchrony did not previously make these arguments, so they are not properly brought on appeal. Furthermore, except for vague references to "underwriting related" claims, Synchrony has not specified exactly which allegations they believe should

---

[6] Upon the Court's own review of the sealed Complaint, it has found only one reference to a specific interest rate in paragraph 52 of the sealed Complaint that might reveal non-public information related to Synchrony's cost-of-funds. In its latest brief, however, Synchrony failed to point the Court to this—or any other—provision of the sealed Complaint. As such, the Court cannot find that Synchrony has shown that it is likely to succeed on the merits.

remain redacted. Accordingly, the Court has no way to determine whether Synchrony's request is meritorious.

Indeed, the record evidence shows that, in October 2019, APG and Synchrony reached a tentative deal for APG to receive access to a partially-unredacted copy of the sealed Complaint. *See* Docs. 75, 93-2. This deal died on the vine because APG informed Synchrony that it might amend its complaint in the Connecticut Action depending upon the content of the sealed allegations. Synchrony therefore refused to provide APG with any portion of the sealed Complaint. In the Court's view, by asking the Court to unseal only part of the sealed Complaint, Synchrony is asking the Court to give it the benefit of the bargain that it previously rejected. Based upon this record evidence, the Court concludes that Synchrony is not likely to succeed on the merits of this argument.

### B. Irreparable Harm To Synchrony

Synchrony argues that, absent a stay, the information it seeks to protect will be released before it can pursue its appeal. The Court agrees that any appellate review of its prior Order unsealing the Complaint will be rendered toothless if the Court denies a stay pending appeal and immediately unseals the sealed Complaint. *See Seidl v. Am. Century Companies, Inc.*, 2014 WL 10937513, at *8 (W.D. Mo. July 2, 2014) (electing to stay order to unseal documents to prevent the information from being revealed "before Defendants could protect their interests by seeking appellate review"); *In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D. R.I. 1980) (granting motion to unseal document but staying that decision "to preserve the status quo and prevent irreparable harm"). The Court acknowledges that unsealing the sealed Complaint is a bell that cannot be unrung and that denying Synchrony meaningful appellate review may

qualify as an irreparable harm. This factor weighs in favor of Synchrony's request for a stay pending appeal.

### C. Substantial Injury To APG

Synchrony argues that a stay will not substantially injure APG because APG waited months to seek unsealing of the sealed Complaint and any additional delay would be "minor." (Doc. 105, p. 13). APG responds that it will indeed suffer substantial injury if a stay is entered because it will be unable to refute Synchrony's arguments in the Connecticut Action and perhaps suffer an adverse ruling. The Court concludes that APG will suffer a substantial injury if a stay pending appeal is entered. Other courts have held that a stay pending appeal can impose substantial harm on a party even if that party has not acted in the timeliest manner. See Dakota, Minn. & Eastern R.R. Corp. v. Schieffer, 742 F. Supp. 2d 1055, 1064 (D.S.D. 2010) (holding that stay would substantially harm a party by denying that party its contractual right to arbitrate, even though that party waited a year and a half to demand arbitration). The Court has already determined that the sealed Complaint should be made public, and APG—along with the rest of the public—is entitled to view the sealed Complaint. The fact that APG waited to seek unsealing of the sealed Complaint makes little difference. Additionally, a stay would expose APG to the risk that the Connecticut Action might be dismissed if the Connecticut Court is unable to review the sealed allegations. As a result, this factor tips sharply in APG's favor.

### D. The Public Interest

As to the final factor that the Court must consider, Synchrony asserts that the public interest would be served by "preserving Synchrony's right to appellate review," by "ensuring that the court system is able . . . to protect a company's trade secrets or

confidential information," and by "requiring securities plaintiffs to state a viable claim before receiving access to discovery." (Doc. 105, p. 13–15).

The Court finds that this factor both weighs for and against a stay pending appeal. First and foremost, it appears to the Court that Synchrony is using the Federal Rules of Civil Procedure to delay the unsealing of information that should otherwise be public in order to prevail in the Connecticut Action. It is in the public's interest to secure a "just, speedy, and inexpensive determination" of this action. *See Twin Cities Galleries, LLC v. Media Arts Group, Inc.*, 431 F. Supp. 2d 980, 984 (D. Minn. 2006) (citing Fed. R. Civ. P. 1). In the Court's view, this is an improper use of the Federal Rules and against the public interest. Second, the Court has already found—and Synchrony has presented no persuasive grounds for reconsideration—that the public's interest in access to the sealed Complaint outweighs any countervailing reasons for nondisclosure. As to Synchrony's argument that the public has an interest in the enforcement of the discovery stay in the Connecticut Action, the Court sees no reason to reconsider its prior holding on this point. *See Gubricky on behalf of Chipotle Mexican Grill, Inc. v. Ellis*, 2018 WL 1558264, at *4 (D. Colo. Mar. 26, 2018) (rejecting the notion that a securities action discovery stay prevents a party from seeking to unseal pleadings in a separate case).

Finally, however, the Court notes that an extension of this Court's temporary stay would allow the Connecticut Court to decide the underlying discovery issues, thereby avoiding duplicative review of the same issues by multiple courts. The conservation of judicial resources is in the public's interest. *See Dalton v. Walgreen Co.*, 2013 WL 2367837, at *2 (E.D. Mo. May 29, 2013) (finding that it was in the public's interest to avoid

"potentially duplicative litigation"). With all of these competing issues in mind, the Court concludes that the public interest factor does not decisively cut in favor of either party.

### E. Weighing The Factors

After weighing all of the factors discussed above, the Court concludes Synchrony has not demonstrated that it is entitled to a stay pending appeal. Synchrony has failed to show that it is likely to succeed on the merits, and APG will suffer substantial harm if a stay pending appeal is granted. On the other hand, Synchrony has shown that it will potentially suffer irreparable harm if a stay pending appeal is not granted. The public interest cuts both ways. In the Court's view, weighing all of these factors and given Synchrony's clear failure to show a likelihood of success on the merits, a stay pending appeal is not appropriate.

While the Court declines to grant Synchrony a complete stay pending appeal, it will grant Synchrony a temporary stay pending the Connecticut Court's decision on the Discovery Motion in that case. As the Court noted, Synchrony will potentially suffer an irreparable harm if the Court unseals the sealed Complaint before Synchrony can seek appellate relief. Here, the Eighth Circuit has stayed Synchrony's appeal until the Connecticut Court rules on the Discovery Motion. Given the risk of causing irreparable harm, the Court concludes that a temporary stay of its decision to unseal the sealed Complaint is appropriate. Whatever the Connecticut Court's decision on the Discovery Motion, it is likely to affect this Court's analysis of whether to grant a full stay pending appeal. Accordingly, the Court will temporarily stay this matter until thirty (30) days after the Connecticut Court rules on the Discovery Motion. Once such a ruling is made, the

parties may file supplemental briefing on the question of whether a full stay pending appeal is appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Synchrony's Emergency Motion for a Stay Pending Appeal (Doc. 104). The Court does, however, **STAY** its Order to unseal the sealed Complaint (Doc. 102) until thirty (30) days after the Connecticut Court rules on the Discovery Motion. The parties are **DIRECTED** to inform the Court when the Connecticut Court rules on the Discovery Motion. Further, the Clerk is **DIRECTED** to keep the sealed Complaint (Doc. 1-1) under seal until further order from the Court.

**IT IS SO ORDERED** on this 29th day of January, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE